UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL W. GAHAGAN                          CIVIL ACTION


VERSUS                                      NO. 15-6218


UNITED STATES CITIZENSHIP AND               SECTION A(3)
IMMIGRATION SERVICES, ET AL.

## ORDER AND REASONS

The following motion is before the Court: **Second Motion for Summary Judgment**

**(Rec. Doc. 42)** filed by plaintiff Michael Gahagan. Defendants United States Citizenship and

Immigration Services ("USCIS") and United States Customs and Border Protection ("CBP") (at

times collectively "Defendants" or "the Government") oppose the motion. The motion, scheduled

for submission on June 29, 2016, is before the Court on the briefs without oral argument. For the

reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

## I.    BACKGROUND

This Freedom of Information Act ("FOIA") case involves a dispute between Gahagan, an

immigration attorney, and the defendant federal agencies. Gahagan submitted two FOIA

requests in his own name to Defendants seeking the production of agency records for use in

representing one of his clients in pending removal proceedings.[1] Gahagan filed FOIA requests

with USCIS and CBP on July 27, 2015 and July 29, 2015, respectively, seeking specific agency

_____

[1] Gahagan has requested that his client's name not be entered into the public record. (Rec. Doc. 24, Minute Entry 1/14/16).

records.[2] Gahagan's allegation with respect to both agencies is that they refused to conduct a legally adequate search responsive to his FOIA requests, refused to produce all responsive agency records in their possession, and failed to produce a legally adequate *Vaughn* index. (Rec. Doc. 1, Complaint ¶¶ 21 & 25). Gahagan prayed for declaratory and injunctive relief in order to obtain the agency documents responsive to his FOIA requests as well as attorney's fees. (*Id.* ¶ 35).

At 1:35 p.m. on December 24, 2015, Gahagan filed a motion for summary judgment comprising 331 pages of material (Rec. Doc. 5). The motion sought to obtain on summary judgment the declaratory and injunctive relief prayed for in the Complaint.

Neither the Complaint nor the motion for summary judgment identified the individual whose records Gahagan was seeking. Therefore, on December 28, 2015, the Government responded with a motion for more definite statement (Rec. Doc. 6), which was noticed before the assigned magistrate judge. The Government then filed an expedited request for a status conference with the Court (Rec. Doc. 11). Gahagan filed a formal opposition to the status conference request, which described in exhaustive detail the Government's alleged bad faith in

---

[2] Gahagan's FOIA request to USCIS sought *inter alia* a copy of his client's entire alien immigration file ("A-File"), entire temporary file ("T-File"), entire Receipt File, and Form I-213 ("Record of Deportable Alien") in the possession of the U.S. Citizenship and Immigration Services. (Rec. Doc. 5-3). Gahagan also requested copies of any electronic and/or handwritten notes written by any USCIS employees, as well as any other documents relating to his client. Gahagan's FOIA request to CBP sought "any and all documents, forms, or other written, photographic, electronic, computer generated, or recorded materials relating to [redacted name] in the possession of U.S. Customs and Border Protection. This includes, but is not limited to, any information relating to his entry into the United States, his stay in the United States, and any investigation(s) carried out by the U.S. Customs and Border Protection relating to his immigration status." (Rec. Doc. 49, Defendants' Exhibit D-A).

meeting its FOIA obligations and in defending this lawsuit. (Rec. Doc. 14). The Court granted the request for a status conference. Mr. Gahagan contacted the Court's staff to protest the Court's decision to set a conference.

On January 7, 2016, the day after the Court entered its order setting a status conference, Gahagan moved for entry of default, which the Clerk denied. (Rec. Docs. 17 & 18). Mr. Gahagan contacted the Clerk's office staff to protest the denial of the default entry. Gahagan moved for reconsideration of the denial, which the Court construed as an appeal of the Clerk's action.

The status conference was held on January 14, 2016. The Court denied several of the pending motions and set a deadline of January 29, 2016, for the Government to supplement its opposition/response to Gahagan's motion for summary judgment. (Rec. Doc. 24, Minute Entry 1/14/16). The Government timely filed its response, and on January 31, 2016, Gahagan replied (Rec. Doc. 26). Gahagan asserted in reply that Defendants were *inter alia* continuing to withhold responsive agency records in violation of the FOIA, and that their proof as to the adequacy of the searches was inadequate.

On March 1, 2016, Defendants sought to cure the deficiencies by filing a supplemental opposition (with attachments) in which they contended that the new submissions would fully satisfy Gahagan's FOIA requests. (Rec. Doc. 30). Gahagan filed a formal opposition to the Government's attempt to supplement its prior production of records (Rec. Doc. 31). The Court granted leave to file the supplemental opposition, which was entered into the record under seal on March 3, 2016 (Rec. Doc. 33).

Gahagan did not move to reply to the Government's supplemental opposition. Instead, Gahagan filed a motion for the Court to reconsider its decision to allow Defendants to supplement their opposition in the first place. (Rec. Doc. 34). The Government filed its opposition,

and in reply Gahagan persisted in his contention that this Court had abused its discretion by granting Defendants' request for leave to supplement after the motion submission date. (Rec. Doc. 38).

Given that Defendants had supplemented their FOIA productions since the filing of Gahagan's motion, and in light of Defendants' contention that their supplement included all materials responsive to the FOIA requests, the Court denied Gahagan's motion for summary judgment as moot. (Rec. Doc. 39). The Court gave Gahagan a deadline to move for whatever residual or additional relief he deemed appropriate in light of Defendants' prior productions.[3] Gahagan filed the instant motion for summary judgment shortly thereafter.

USCIS and CBP take the position that they have fully responded to Gahagan's FOIA requests in accordance with the law. Gahagan's specific contentions are addressed below.

## II.   <u>LEGAL STANDARD</u>

Most FOIA cases are resolved at the summary judgment stage. *Flightsafety Servs. Corp. v. Dep't of Labor*, 326 F.3d 607, 610 (5th Cir. 2003) (quoting *Cooper Cameron Corp. v. United States Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002)). But under the FOIA the burden is on the agency to sustain its action. *Id.* at 610-11. Thus, in the FOIA context the traditional summary judgment standard is modified because "the threshold question in any FOIA suit is whether the requester can even *see* the documents the character of which determines whether they can be released." *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (quoting *Cooper Cameron*, 280 F.3d

---

[3] Gahagan points out that he did not receive any responsive agency records from USCIS until after he filed suit. (Plaintiff's Exhibit 21, Plaintiff's Declaration). He did not receive anything from CBP until after he filed his first motion for summary judgment. (*Id.*)

at 543) (emphasis in original). The FOIA statute provides that when the Government withholds information from disclosure, the agency has the burden to prove de novo that the information is exempt from disclosure. *Id.* (citing 5 U.S.C. § 552(a)(4)(B)). The district court may conduct an in camera review of withheld documents. *Id.*

The Act incorporates nine exemptions which an agency may rely upon to protect certain documents from disclosure. Exemptions to disclosure are explicitly limited by statute and should be construed narrowly. *Batton*, 598 F.3d at 175 (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). In order to avoid summary judgment the agency must make an appropriate showing that identifies the documents at issue and explains why they fall under an exemption. *See id.* (quoting *Cooper Cameron*, 280 F.3d at 543).

The agency may satisfy its burden of proof through the submission of affidavits that identify the documents at issue and explain why they fall under the claimed exemption. The affidavits must be clear, specific, and reasonably detailed while describing the withheld information in a factual and nonconclusory manner. *Mavadia v. Caplinger*, No. 95-3542, 1996 WL 592742, at *1 (E.D. La. Oct. 11, 1996) (Vance, J.). A *Vaughn* index, named after the decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), is a common FOIA procedural device that lists the documents responsive to the request and explains why portions have been withheld. *Cooper Cameron*, 280 F.3d at 544 n.12. The agency's affidavits and declarations are entitled to a "presumption of legitimacy" unless there is evidence of bad faith in handling the FOIA request. *Batton*, 598 F.3d at 176 (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991)).

Also, the FOIA requires that the agency release any reasonably segregable portion of a record after deletion of the portions which are exempt. 5 U.S.C. § 552(b). The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on

the released portion of the record, unless including that indication would harm an interest protected by the exemption under which the deletion is made. *Id.* If technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made. *Id.*

## III.    **DISCUSSION**

Gahagan's motion pertains *inter alia* to whether Defendants properly withheld 1) four pages that USCIS referred to ICE[4], 2) two pages that USCIS referred to DOS[5], 3) two pages or records withheld in their entirety by CBP, and 4) approximately 1071 pages withheld in their entirety by USCIS. Gahagan also raises other issues pertaining to the adequacy of the *Vaughn* index and the adequacy of the segregability analysis.

---

[4] United States **I**mmigration and **C**ustoms **E**nforcement.

[5] **D**epartment **o**f **S**tate. The Court will assume for the following reasons that the motion is moot with respect to the two pages referred to DOS (Plaintiff's Exhibit 16). In Defendants' opposition, they advise that all materials referred to ICE and DOS were processed and the non-exempt material was released to Plaintiff. (Rec. Doc. 49, Opposition at 9). The release letter from DOS, Defendants' Exhibit B, advises that both pages were subject to a FOIA exemption and would not be released. In his Reply, Gahagan, while mischaracterizing Defendants' opposition as claiming that all referred material had been produced to Plaintiff (in fact, Defendants were clear in that all referred material had been processed and released **but for specific FOIA exemptions**), rejoins that four pages of information referred to other agencies are still being withheld and he describes these pages as "the information that USCIS and CBP transferred to non-party agencies." (Rec. Doc. 52, Memo in Support at 9). In support of this statement, Gahagan cites, not to the exhibit numbers that he used in his briefing in support of his motion, but rather to pp. 101-103, and 128 of his Rec. Doc. 42-5. (Rec. Doc. 52, Memo in Support at 9). The Court matches these specific page references to Plaintiff's Exhibits 12 and 17 (p.13 only) which were documents that USCIS, not CBP, referred to ICE, not to DOS. Therefore, the Court assumes that the issue with respect to the two pages referred from USCIS to DOS is moot. Gahagan is not precluded from moving for appropriate relief if the Court has reached this conclusion in error.

### *Four Pages Referred to ICE*

"Referral" is the procedure whereby a federal agency subject to a FOIA request "refers" a record in its possession to the federal agency where the record originated. *See Gahagan v. USCIS*, No. 15-2540, 2015 WL 7777982, at *6 (E.D. La. Dec. 2, 2015) (Vance, J.). The originating agency then determines whether the record is subject to a FOIA exemption and generally communicates its determination directly to the requestor. The Fifth Circuit has not addressed the lawfulness of a referral procedure but other courts have declined to deem it per se unlawful unless its "net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." *Id.* (quoting *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983)).

The Court rejects Gahagan's contention that the practice of referral constitutes a per se violation of the FOIA when the referred materials are not processed within the FOIA's twenty-day mandate. Although Gahagan contends that there is currently a two-and-one-half year backlog for production of USCIS records referred to ICE, as of the time that the Government filed its opposition in this case all referrals had been processed. (Rec. Doc. 49, Opposition at 11). The Court agrees that there was no significant delay involved in obtaining the records.

Given that four pages referred by USCIS to ICE ultimately were withheld in their entirety as being exempt, the Court now considers the adequacy of the *Vaughn* index vis à vis these pages. (Rec. Doc. 49, Defendants' Exhibit C, *Vaughn* index for ICE referrals). The four pages at issue are 1 page described as the missing page 13 of 66 filed as Plaintiff's Exhibit 17 and 3 other pages filed as Plaintiff's Exhibit 12.

The declarant for ICE's *Vaughn* index is Fernando Pineiro, Jr., Deputy FOIA Officer. (Rec. Doc. 49, Defendants' Exhibit C). In addressing the production of 65 of 66 pages of referred

material, Pineiro explains that one page was identified as being misfiled in Plaintiff's A-File because it belonged to a different alien so it was not produced. (*Id.* ¶ 8). Assuming that Pineiro is referring to the withheld page 13 of 66 page in Plaintiff's Exhibit 17, which he never refers to explicitly in either his declaration or the detailed description attachment, the withheld document itself cites exemption (b)(7)(E), which pertains to records compiled for law enforcement purposes that would disclose techniques and procedures for law enforcement . . . . This exemption has nothing to do with the misfiling of unrelated documents, assuming again that the misfiled document that Pineiro refers to is actually the withheld page 13 of 66 in Plaintiff's Exhibit 17. USCIS, through ICE, has not met it burden with respect to this withholding. Accordingly, within 20 days of entry of this Order and Reasons, USCIS, through ICE, shall produce a *Vaughn* index that specifically addresses the withheld page 13 of 66 in Plaintiff's Exhibit 17. If this page is in fact the misfiled document that Pineiro refers to then it would not be responsive to Gahagan's FOIA request, it would not be subject to production, and any issue with respect to segregability would be moot.

Further, neither the *Vaughn* index nor the opposition addresses Plaintiff's Exhibit 12, which comprises three pages that USCIS withheld in their entirety to refer to ICE—in fact, they are stamped "Referred to Immigration and Customs Enforcement." These three pages derive from the January 29, 2016 Roth production described in Plaintiff's Material Fact ¶ 8 (although presumably stating in error that the documents were transferred to CBP instead of ICE). USCIS, through ICE, has not met it burden with respect to this withholding. Accordingly, within 20 days of entry of this Order and Reasons, USCIS, through ICE, shall produce a *Vaughn* index that specifically addresses the 3 missing pages. If the documents are withheld then a proper segregability analysis must also be included.

### *Two Pages Withheld By CBP*

It is not clear to the Court that two documents were actually withheld in their entirety by CBP. CBP's declarant was Sabrina Burroughs, Director of the FOIA Division for CBP. CBP identified 11 documents responsive to the FOIA request. (Rec. Doc. 49, Defendants' Exhibit D, Burroughs's declaration ¶ 9). The production is attached to Burroughs's declaration and it comprises eleven redacted documents and what appears to be the cover page referenced in ¶ 12 of Burroughs's declaration. There is no other unaccounted for page. Meanwhile, the documents that Gahagan refers to are located at Rec. Doc. 15-2, at 4 and 16. (Rec. Doc. 42-2, Memo in Support ¶ 23), which are the cover page document and a completely blank page at the very end, which the Court assumes was a superfluous page that counsel inadvertently included when he filed Rec. Doc. 15-2 into the Court's CM/ECF filing system. Of course, assumptions are not appropriate. Therefore, within 20 days of entry of this Order and Reasons, CBP shall produce a supplemental *Vaughn* index that specifically addresses the pages filed into the record at Rec. Doc. 15-2, page 4 and 16. If the documents turn out to be withheld records responsive to the FOIA request then CBP must also include a segregability analysis.

### *Adequacy of CBP's Search for Responsive Records*

Burroughs's declaration establishes that CBP performed a legally adequate search for information responsive to Gahagan's request. Burroughs explains the search methods used, including the specific databases that were searched, and the search terms that were used. CBP searched the specific databases that were likely to contain information responsive to Gahagan's request and Burroughs explains why the scope of the search was limited to those files. The Court is not persuaded that Burroughs's characterization of the request as seeking "travel-related' information indicates that CBP impermissibly narrowed the scope of the search.

### *Approximately 1071 pages Withheld in Their entirety by USCIS*

On January 29, 2016, Gahagan received an email from USCIS employee Howard S. Roth advising that USCIS had processed 1400 pages that were not included in USCIS's initial release. On that same day, 113 pages were produced (of which 92 pages were fully withheld and 3 pages were transferred to ICE). On March 1, 2016, Roth emailed 216 pages of the 1400 mentioned in his January email. Thus, 1071 (1400 - (113 + 216)) pages are being completely withheld.

### *Adequacy of USCIS's Search for Responsive Records*

At the outset the Court addresses the adequacy of USCIS's search for records responsive to Gahagan's FOIA request. USCIS has submitted the declaration of Jill A. Eggleston, Associate Director in the Freedom of Information and Privacy Act Unit, National Record Center (NRC), USCIS, within the United States Department of Homeland Security. (Defendants' Exhibit A). Eggleston explains in reasonable and sufficient detail how NRC processed Gahagan's FOIA request. NRC located the client's A-File bearing his name and alien number. The USCIS New Orleans Field Office was then tasked to search for hand-written and e-mail communications about the client that may not have been included in the A-File. The declaration lists the specific employees who performed the various searches and it describes exactly what each employee searched. (*Id.* at 6). The search that resulted in USCIS's third production is also described by employee, search term, and the resource searched. (*Id.* at 7-8). Eggleston expresses certainty that in light of the specific FOIA request at issue she is confident that the NRC identified all offices to be searched in order to obtain documents responsive to

Plaintiff's request. (*Id.* ¶ 19). The Court is persuaded that USCIS has met its burden of establishing that it conducted a legally adequate search.

### *Withholding of Duplicates*

NRC culled what it determined to be "duplicate" documents before releasing anything to Gahagan. It is Gahagan's contention that the overwhelming majority of the improperly withheld 1071 documents referenced above have been unilaterally classified by USCIS as "duplicates." USCIS did not include the duplicates as part of its *Vaughn* index.

The FOIA does not list "duplicate" status as an exemption from production. Thus, according to Gahagan, when a responsive non-exempt record is in the agency's possession it must be produced regardless of whether the agency happens to consider it a duplicate of another record.

In another one of Gahagan's cases in this district, Judge Brown, noting that USCIS could cite no legal authority to support the withholding of duplicates, ordered USCIS to produce the documents to Gahagan subject of course to any statutorily authorized redactions. *Gahagan v. USCIS*, No. 14-2233, 2015 WL 350356 (E.D. La. Jan. 23, 2015). NRC surely had laudable motives in culling out what it believed to be duplicative documents but if Gahagan wants them the Court can discern no justification for withholding them. Therefore, USCIS is ordered to produce the duplicates to Gahagan, subject to authorized redactions, within 20 days of entry of this Order and Reasons.

### *Plaintiff's Exhibit 11*

Exhibit 11 appears to comprise the 92 fully withheld documents in USCIS's second production on 1-29-16 that was transmitted in the Roth email. Gahagan challenges the adequacy of the *Vaughn* index with respect to these documents and of USCIS's segregability analysis. The

Court is persuaded that the *Vaughn* index adequately describes the withheld documents and the exemptions that USCIS relies upon. The Court is not persuaded, however, that USCIS's seqregability analysis suffices. USCIS's segregability analysis consists of a few statements from Eggleston's declaration and those statements apply globally to all of the documents that USCIS produced with redactions.[6] Therefore, within 20 days of entry of this Order and Reasons, USCIS shall produce a segregability analysis that specifically addresses the pages filed into the record at Plaintiff's Exhibit 11.

### Plaintiff's Exhibit 14

Exhibit 14 appears to comprise the14 pages fully withheld in USCIS's first production on 12-11-15. Gahagan challenges the adequacy of the segregability analysis with respect to these documents. In light of the nature of the documents as described in the *Vaughn* index, the Court finds no merit to Gahagan's challenge to the adequacy of the segregability analysis.

### Plaintiff's Exhibit 15

Exhibit 15 derives from USCIS's third production on 3-1-16 of 57 pages of partially withheld emails. Gahagan argues that USCIS's segregability analysis is inadequate to demonstrate that non-exempt information has not been withheld. The Court disagrees. It is clear from the headers on the email chains that these communications pertain to litigation that the

---

[6] "In making this determination, the NRC considered whether any information could be segregated and released." (Defendants' Exhibit A, Eggleston declaration ¶ 20). "All of the documents withheld by USCIS, whether in full or in part, have been carefully reviewed on a page by page, line by line basis, in an attempt to identify reasonably segregable, non-exempt information. It has been determined that no further segregation of meaningful information in the withheld documents is possible without disclosing information that warrants protection under the law. The only information withheld from the Plaintiff is information that is entitled to protection from disclosure." (*Id.* ¶ 23).

client was pursing against the local USCIS director. All of the senders and recipients are attorneys for the Government.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Second Motion for Summary Judgment (Rec. Doc. 42)** filed by plaintiff Michael Gahagan is **GRANTED IN PART AND DENIED IN PART** as explained above.

August 19, 2016

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE